IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

UNITED STATES OF AMERICA,

    v.                                        **Criminal No.: 0422 2:24-cr-00028**

**ANYELO JESUS MUINO AYALA**
a/k/a "Justin Bieber"

    **Defendant,**

---

## POSITION OF THE DEFENDANT ON SENTENCING

COMES NOW the Defendant, Anyelo Jesus Muino Ayala, by counsel, in accordance with Rule 32 of the Federal Rules of Criminal Procedure, Section 6A1.2 of the Sentencing Guidelines and Policy Statements, as well as this Court's Sentencing Order, and hereby represents that the Defendant has reviewed the Probation Officer's Pre-sentence Report and sets forth the following as his position on sentencing:

### OBJECTIONS TO THE PRE-SENTENCE REPORT

Mr. Ayala, through counsel, has previously advised the probation office and the government that there are no objections to the presentence report.

### APPLICATION OF THE 18 U.S.C. §3553 SENTENCING FACTORS IN SUPPORT OF A VARIANT SENTENCE

#### Introduction

Pursuant to 18 U.S.C. § 3553(a), the sentencing court is directed to impose a sentence that is "sufficient, but not greater than necessary" to achieve the goals set forth by Congress, including the imposition of a just punishment. In determining the minimally adequate sentence § 3553 also directs the court to consider, among other factors:

1

(1) the specific nature and circumstances of the offense,

(2) the unique history and characteristics of the defendant,

(3) the need to foster deterrence and promote respect for the law,

(4) the need to protect the public from further crime,

(5) the need to address any educational, vocational, medical, or therapeutic concerns with respect to the individual defendant, and

(6) the kinds of sentences available, including the ranges and category of offense.

In assessing these factors, the statute further requires that the court consider the applicable sentencing guidelines. The court, however, "may not presume that the Guidelines range is reasonable," and instead "must make an individualized assessment based on the facts presented." *Gall v. United States*, 128 S. Ct. 586, 597 (2007), *see also Rita v. United States*, 551 U.S. 338, 351 (2007) ("[T]he sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply."). The sentencing guidelines are merely "a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Rita*, 551 U.S. at 350.

As the arguments below bear out, a sentence of twenty-four (24) months incarceration is the appropriate disposition in this matter. Recognizing that this is a significant variance from the guidelines, it is one that is entirely sufficient given the personal and unique characteristics of Mr. Ayala, and it addresses all of the goals and needs of sentencing, while still recognizing the individual circumstances of the offense, Mr. Ayala's utmost remorse for his involvement in the criminal scheme, his ability to be rehabilitated and serve as a productive, thriving member of society, the extent in which he was involved in the scheme, and most importantly the need to avoid unwarranted sentencing disparities.

In sum, a sentence of 24 months incarceration is entirely *sufficient* to serve the goals of

sentencing, and is not greater than necessary.

## Nature and Circumstances of the Offense

Mr. Ayala was convicted by this court of a single count of Racketeer Influenced and Corruption Organizations (RICO) Conspiracy, in violation of 18 U.S.C. 1962(d).

This conviction was upon a plea of guilty, whereby Mr. Ayala took full and complete responsibility for his actions. In doing so, he saved the court, the United States Attorneys' Office, the Marshall's office, and the agencies and personnel involved as potential witnesses significant time and resources that otherwise would have been used in trying the case. This is particularly important when considering the nature of the conspiracy and the geographic locations of all of the Government's witnesses. This matter likely would have resulted in a lengthy trial, with great expenditures required for the Government to present its case. Mr. Ayala's acceptance of responsibility should therefore hold considerable weight in this particular case.

While he does not in any way seek to minimize the severity of the offense and the potential for harm involved, Mr. Ayala's role in this particular offense was limited compared to his co-defendants. Essentially, Ayala's role was to serve out what the leading members of the conspiracy directed him to do. At the time, Mr. Ayala had no criminal history and was only 21 years old. It is clear from the discovery and other evidence that Mr. Ayala was heavily influenced by the co-defendants to engage in the conspiracy.

It is clear from a review of the P.S.R. of the limited and menial role that Mr. Ayala played in the case. He received no role enhancement precisely because he was not a leader or an organizer. The discovery reveals he rented cars, googled various locations and then drove to those locations. There are no pictures, videos, or audios of him obtaining or using any of the gift cards. The leaders of the organization recognized his weaknesses and with the promise of alcohol, drugs, and money

3

convinced him to engage in such conduct. With a clear mind today, he looks back and wonders how he ever allowed himself to be engaged in such conduct.

While the guidelines are correct, the staggering figure of $6,000,000 plus is applied to the defendant. Mr. Ayala is responsible for all the acts of his coconspirators regardless of whether he was aware of them or not. He accepts this, but asks the court to focus more on the forfeiture amount of $109,000.00, which while still high more accurately reflects his involvement. Again, as mentioned above, his limited role and limited time engaged in the conduct calls for a sentence well below the guideline range.

### History and Characteristics of the Defendant

18 U.S.C. §3553's directive that the court must consider the unique history and characteristics of the defendant embodies the long-held principle that a sentencing court must consider the defendant's crimes not in a vacuum, but in light of his or her entire life.

Mr. Ayala is before the court as an example—putting aside the instant offense—of the American dream. Mr. Ayala was born in Havana, Cuba under the auspices of a Communist regime that directly impacted him and his family. As he recounts in the PSR, the Cuban Government invaded his home when he was a young child—seizing his family's personal belongings and the home itself. He was markedly traumatized by this experience, and has expressed ongoing anxiety as a result of the memory. He was in fact previously treated for this anxiety. His parents moved to the United States when he was 13, and ultimately achieved citizenship. They learned English and lived and worked in southern Florida—providing for Mr. Ayala and the rest of his family. His family overcame the struggles and hardships of their prior life, and in the end Mr. Ayala was well provided for in his childhood.

Despite his strong upbringing, Mr. Ayala unfortunately turned to drugs as a teenager when

4

he began to experiment with marijuana, cocaine, and ecstasy. Mr. Ayala's drug use became frequent. As he states in the PSR, "I had no control over it. I had to go to the hospital for recovery several times." This addiction was confirmed by his brother, who provided documentation of not only in-patient treatment in 2019, but also that Mr. Ayala at the time had a chief complaint of suicidal ideations.

The connection between drug abuse, mental health issues, and criminal behavior is well-established. It is likely that the combination of the first two factors led to Mr. Ayala associating himself with the co-defendants and other individuals who ultimately were not positive influences on his life. This combined with his young age unfortunately made Mr. Ayala susceptible to criminality.

Despite this, Mr. Ayala possesses all of the circumstances and factors that should reassure the court of his potential to succeed upon release. He has a strong knit family, particularly with a loving and supportive brother. He is a graduate of high school with vocational training in barbering, and he has demonstrated that he can maintain steady employment during his short period of time as an adult.

In sum, Mr. Ayala is young, hardworking, and intelligent. He also—like most Americans—has his own struggles that he must face and overcome. He will benefit from continued vocational training and substance abuse treatment while incarcerated, and combined with a period of supervised release he should have the tools necessary to succeed after his incarceration.

### The Need to Foster Deterrence and Promote Respect for the Law, and The Need to Protect the Public from Further Crime

Congress further directs the Court to consider the need to foster deterrence and promote

respect for the law, and also to protect the public from further crime.

Beginning with specific deterrence. Mr. Ayala has never before been incarcerated. For him, a sentence of 24 months will be substantial and significant. It will be a difficult sentence him to serve. The days, weeks, months, and years of his life that he will be losing to the fraud was—simply put—not worth it. This period of incarceration will remain in his mind should he ever consider repeating past crimes, and that mental connection will serve to deter him from future crimes. The sentence will also serve as punishment.

In regards to general deterrence, undersigned counsel acknowledges and is acutely aware that this is one of the most important factors for this court to consider in this case. Nonetheless, the goal of general deterrence is met by the recommended sentence, particularly in light of the fact that the previous co-defendants were sentenced similarly. The period is substantial for a non-violent felony, and it would deter others from engaging in similar conduct.

### The Need to Address Any Educational, Vocational, Medical, or Therapeutic Concerns

Mr. Ayala has clearly struggled with alcohol, marijuana, and cocaine for almost the entirety of his adult life. He can certainly benefit from the R.D.A.P. and mental health treatment from the B.O.P. His age, vulnerability, and drug and alcohol use provide the opportunity for the older, experienced members of the enterprise to take advantage of Mr. Ayala and employ him as they saw fit. Mental health treatment can provide him with the strength to say "No." and avoid such manipulation in the future.

### The Kinds of Sentences Available

The Pre-sentence Report sets forth a total offense level of 26 and criminal history category of I. The resulting guideline's recommendation is 63 to 79 months. The directive by Congress that a sentence be "sufficient" but not "greater than necessary" is paramount here. He

unmistakably and utterly regrets his involvement. Unfortunately, the nature of the offense and the resulting offense level and guidelines recommendation places Mr. Ayala in a position where the kind of available sentence is limited to incarceration.

As discussed elsewhere, incarceration for an individual such as Mr. Ayala is markedly different from other defendants due to his lack of any criminal history and his youth. He is not an individual who has been in-and-out of the court system and who may view prison as a revolving door. One day in prison for Mr. Ayala is significant and hard, a fact that he has already learned and experienced in pre-trial custody at Norfolk City Jail. Accordingly, a sentence of 24 months incarceration is an appropriate disposition in this case. For Mr. Ayala, in consideration of his background and individual characteristics, it is a significant sentence that meets the goals of Congress. Spending nine months plus in Norfolk City jail is an onerous punishment for one never in that position before.

## The Need to Avoid Unwanted Sentencing Disparities

The most important consideration for the court to consider in this case is the need to avoid unwanted sentencing disparities. In 2021, this district sentenced 7 co-defendants from a separate, earlier indictment, in the matters of *United States v. Pedro Duran, United States v. Yariel Ruiz, United States v. Guillermo Fuentes, United States v. Jorge Fuentes, United States v. Luis Cardente, United States v. Yasmani Quijada, and United States v. Denis Diaz* (EDVA, 2:19-cr-109). In those cases, similarly situated defendants were sentenced on Count 1 to sentences that are consistent with Mr. Ayala's recommendation. Specifically, Mr. Duran was sentenced to thirty (30) months, Mr. Ruiz was sentenced to nineteen (19) months, Mr. G. Fuentes was sentenced to twenty-three (23) months, Mr. J. Fuentes was sentenced to thirty-six (36) months, Mr. Cardente was sentenced to forty (40) months, and Mr. Diaz was sentenced to (37) months. Mr. Quijada was the sole outlier

with a sentence of ninety-six months (96).[1]

The need to avoid unwarranted sentencing disparities should be given great weight in this particular case. Mr. Ayala's advisory guidelines are far in excess of the sentences that previous co-defendants received in this matter, involving the same scheme and the same circumstances. This, in addition to Mr. Ayala's reduced role in the offense, certainly warrants the recommended sentence. The Court should consider the limited time and the limited role on behalf of Mr. Ayala. Such a sentence serves as a sentence that is not greater than necessary to effectuate the goals of Congress, and is consistent with the sentences already imposed in this matter.

## CONCLUSION

The court shall consider each of the above factors in light of the applicable recommended sentencing guidelines range and be mindful of the directive to avoid unwarranted disparities in the sentences of similarly situated defendants.

As previously discussed, Mr. Ayala opted to waive his Constitutional right to a jury trial and took full and complete responsibility for his actions. He is incredibly remorseful. His life has been forever changed by these crimes. He will now have a felony conviction, he will serve a substantial penitentiary sentence as a zero-point offender who has never before seen the inside of a prison, and his life upon release will be markedly difficult in terms of employment prospects and benefits.

For many defendants who come before the court, the criminal justice system is about punishment and the protection of the community as a whole from likely repeat offenders. For other defendants though, it is about second chance and the opportunity to prove to the court but also the community that they are not defined solely by the criminal acts which bring them into the

---

[1] Several of these co-defendants were also charged with aggravated identity theft which added an additional 24 months.

courtroom in the first place. Mr. Ayala is a prime example of that. He is young enough that the remainder of his life will not necessarily be defined by his actions. If given a second chance, he has the opportunity to demonstrate to the court, the Government, and the community that he is capable and willing to live and serve as a productive, law-abiding member of society.

For the reasons set forth above, the Defendant, Mr. Ayala, by counsel, respectfully submits that a sentence of twenty-four (24) months and a period of supervised release will accomplish the purposes of sentencing set forth in 18 U.S.C. § 3553. Mr. Ayala further requests that a recommendation be made to the Bureau of Prisons to assign him to a facility near his family in Miami, Florida.

Attached to this position paper are documents that the defendant respectfully requests be reviewed by the Honorable Court prior to the sentencing hearing, as follows:

Respectfully submitted,

ANYELO JESUS MUINO AYALA

By Counsel

_____/s/_____
James O. Broccoletti
VSB# 17869
Counsel for Defendant
ZOBY & BROCCOLETTI, P.C.
P.C. 6663 Stoney Point South
Norfolk, VA 23502
(757) 466-0750
(757) 466-5026
james@zobybroccoletti.com

## CERTIFICATE OF SERVICE

      I hereby certify that on the 28th day of March, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Clayton LaForge
Kristen S. Taylor
Assistant U. S. Attorney
Office of the U. S. Attorney
101 W. Main Street, Suite 8000
Norfolk, VA 23510

                                                        _____/s/_____
                                                        James O. Broccoletti
                                                        VSB# 17869
                                                        Zoby & Broccoletti, P.C.
                                                        6663 Stoney Point South
                                                        Norfolk, VA 23502
                                                        (757) 466-0750
                                                        (757) 466-5026
                                                        james@zobybroccoletti.com

      I hereby certify that on the 28thth day of March, 2025, I caused a true and correct copy of the foregoing Motion to be mailed to the following non-filing user:

Joshua Coleman
United States Probation Officer
U.S. Probation Office
600 Granby Street, Suite 200
Norfolk, VA 23510

                                                        _____/s/_____
                                                        James O. Broccoletti
                                                        VSB# 17869
                                                        Zoby & Broccoletti, P.C.
                                                        6663 Stoney Point South
                                                         Norfolk, VA 23502
                                                        (757) 466-0750
                                                        (757) 466-5026
                                                        james@zobybroccoletti.com